**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

JA-QURE AL-BUKHARI,
Plaintiff,

v.

DEPARTMENT OF CORRECTION, et al.,
Defendants.

CASE NO. 3:16-cv-353 (SRU)

**INITIAL REVIEW ORDER**

Plaintiff Ja-Qure Al-Bukhari, currently incarcerated at Cheshire Correctional Institution in Cheshire, Connecticut, filed this case *pro se* under 42 U.S.C. § 1983 alleging that the defendants violated his rights under the First, Fifth, Eighth and Fourteenth Amendments and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., by, inter alia, breaching a prior settlement agreement and subjecting him to excessive force, cruel and unusual punishment, and denial of medical and mental health needs. Al-Bukhari names as defendants the Department of Correction, Warden Scott Erfe, Captain Jesse Johnson, and Corrections Officers Daniel Phillips, Jeremie St. Pierre, Ryan Baron, and James Vesser. The complaint was received by the Court on March 2, 2016. Al-Bukhari's motion to proceed *in forma pauperis* was granted on April 1, 2016.

Under section 1915A of Title 28 of the United States Code, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* Although detailed allegations are not required,

the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

I.  Allegations

Al-Bukhari alleges that the following incidents underlying this action occurred while he was confined at the Cheshire Correctional Institution.

A.  Mental Illness

Al-Bukhari has been diagnosed with several mental disorders including bipolar disorder, post-traumatic stress disorder, attention deficit hyper-activity disorder, oppositional defiant disorder, paranoid disorder, and antisocial personality disorder with narcissistic and borderline traits. He has taken medication to treat these disorders since childhood.

B.  Placement in Disciplinary Seclusion

On November 17, 2015, defendant Johnson placed Al-Bukhari in disciplinary seclusion following his receipt of a false disciplinary charge for security tampering. The charge was later dismissed. The defendants did not attempt mental health intervention before subjecting him to confinement in disciplinary seclusion.

While in disciplinary seclusion, Al-Bukhari asked for his Quran, prayer rug and other Islamic reading material. He required these materials to make his daily prayers. Defendant Johnson denied the request. Al-Bukhari's mental health deteriorated and he began to "act up."

C. Placement in Restraints

On November 19, 2015, defendant Johnson ordered Al-Bukhari placed on in-cell restraint status because he was acting up. Defendants Johnson, Phillips, St. Pierre, Baron, and Vassar entered Al-Bukhari's cell and told him that he would be placed on in-cell restraints. When he refused to submit to the restraints, defendant Johnson sprayed Al-Bukhari with a chemical agent. Defendant Johnson sprayed him directly in the face from about a foot away. After deploying the chemical agent, defendant Johnson immediately struck Al-Bukhari in the head with his radio. Defendants Phillips, St. Pierre, Baron, and Vassar also began beating Al-Bukhari, who fell to the floor and tried to cover his head with his arms and hands. Defendants Johnson, Phillips, St. Pierre, Baron, and Vassar kicked and punched Al-Bukhari in the head, arms, legs, and back.

Al-Bukhari was handcuffed with his hands behind his back while he was on the floor. Defendant St. Pierre or defendant Baron placed Al-Bukhari's right knee in a submission hold and executed a twisting motion, causing injuries to the knee. The defendants failed to properly decontaminate Al-Bukhari. They forced his head under hot water, which exacerbated the burning sensation on his face. Although a hand-held camera was present, defendant Johnson did not permit the operator to turn on the camera until after the beating was over.

Defendants Phillips, St. Pierre, Baron, and Vassar applied in-cell restraints consisting of handcuffs and leg shackles connected with a tether chain. After he was placed in the restraints, Al-Bukhari threatened self-harm by banging his head on the cell doors, walls, and restraints.

Defendant Johnson then ordered Al-Bukhari placed in four-point restraints to deny him access to the doors and walls.  Once in four-point restraints, Al-Bukhari began banging his head on the hard surface of the bunk, causing the back of his head to bleed and swell.  Defendant Doe recorded this activity on the camera.  None of the defendants tried to protect Al-Bukhari from self-harm.

      D.      Settlement Agreement

Al-Bukhari entered a settlement agreement with Department of Correction officials in March 2014.  As part of the agreement, the correctional officials agreed not to restrain him or use chemical agents on him without complying with the requirements set forth in Department of Correction Administrative Directives 6.5 and 8.5.  Defendants Johnson, Phillips, St. Pierre, Baron, and Vassar violated the settlement agreement when they restrained Al-Bukhari and used chemical agents on him. As a result of these actions, Al-Bukhari suffered a broken knee, facial bruising, bruising and swelling to his head and body, pain, fear, anxiety, humiliation, and emotional distress.  Defendant Johnson's actions in deploying the chemical agent caused burning and swelling of his eyes and face, burning lungs, lung congestion, pain, fear, anxiety, humiliation, and emotional distress.

      E.      Failure to Train

Defendant Erfe was generally aware that defendant Johnson was misusing force against inmates and knowingly violating administrative directives but failed to remedy the situation.  He failed to properly train defendant Johnson and the other officers regarding the proper amount of force to use when subduing an inmate.

      F.      Deliberate Indifference

The defendants were aware of Al-Bukhari's medical and mental health needs and the effect of conditions of confinement on those needs. All defendants were aware that seriously mentally-ill inmates should not be placed in seclusion or on mechanical restraints, or be subjected to chemical agents without a professional opinion and medical supervision. Defendants Johnson, St. Pierre, Phillips, Baron, Vassar and Doe were aware that Al-Bukhari was engaging in acts of self-harm but failed to take any actions to protect him.

## II. Analysis

Al-Bukhari includes ten counts in his complaint: defendants Johnson, Phillips, St. Pierre, Baron, and Vassar used excessive force against Al-Bukhari (Count One); defendants Johnson, Phillips, St. Pierre, Baron, and Vassar subjected Al-Bakhari to assault and battery by physically beating him, placing him, in in-cell restraints, and deploying chemical agents (Count Two); defendants Johnson, Phillips, St. Pierre, Baron, and Vassar violated Al-Bukhari's rights under the Connecticut Patient's Rights statute by placing him in seclusion, in-cell, and four-point restraints (Count Three); defendants Johnson, Phillips, St. Pierre, Baron, and Vassar violated Al-Bukhari's right to due process and freedom from bodily restraints by placing him in seclusion, in-cell, and four-point restraints (Count Four); defendants Johnson, Phillips, St. Pierre, Baron, and Vassar were deliberately indifferent to Al-Bukhari's medical and mental health needs (Count Five); defendants Johnson, Phillips, St. Pierre, Baron, Vassar, and Doe failed to protect Al-Bukhari from self-harm (Count Six); defendant Erfe violated Al-Bukhari's Eighth and Fourteenth Amendment rights by creating a policy under which Al-Bukhari's rights were violated and failing to supervise his subordinates (Count Seven); defendant Johnson violated Al-Bukhari's right to freely exercise his religious beliefs under the First Amendment and the

Religious Land Use and Institutionalized Persons Act by denying Al-Bukhari's his Quran and prayer rug (Count Eight); all defendants violated the Americans with Disabilities At by denying him the benefits of the settlement agreement (Count Nine); and defendants Johnson, Phillips, St. Pierre, Baron, and Vassar violated Al-Bukhari's right under the settlement agreement to be free from restraints and exposure to chemical agents (Count Ten).[1]

A. Americans with Disabilities Act

In the Ninth Count, Al-Bukhari alleges that the defendants have violated the Americans with Disabilities Act by denying him the benefits of his March 2014 settlement agreement. The purpose of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The statute provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. The statute is intended "to ensure evenhanded treatment between the disabled and the able-bodied." *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998).

Al-Bukhari has not identified any program or service that is routinely provided to able-bodies inmates but not to him. Settlement agreements entered to settle cases are not programs or services of the Department of Correction. Further, the issue with the settlement agreement is

[1] I interpret Count Ten, though styled as a claim for breach of the settlement agreement, as a standard section 1983 action against the individual defendants. Because the individual defendants are not named parties of the settlement agreement, they cannot be sued for its breach.

unique to Al-Bukhari. No other inmates were involved in the settlement agreement. Thus, there is no factual basis for an ADA claim based on the alleged failure to comply with the settlement agreement. Any ADA claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1). However, Al-Bukhari may still state a breach of contract claim against the Department of Correction arising out of the alleged violations of the settlement agreements. Even though Count Nine is styled as an ADA claim, I interpret it in the light most favorable to the pro se plaintiff and read it to include a breach of contract claim against the Department of Correction. Though the ADA potion of that claim is dismissed, the breach of contract claim remains.

B. Defendant Department of Correction

Al-Bukhari names the Department of Correction as a defendant. The Department of Correction is a state agency, which is not considered a person within the meaning of section 1983. *See Will v. Michigan Dep't of Police*, 491 U.S. 58, 70–71 (1989); *see also Francilme v. Department of Corrections*, No. 3:14-cv-808 (SRU), 2014 WL 5420789, at *3 (D. Conn. Oct. 22, 2014) (holding that Department of Correction is not a person within the meaning of section 1983). In addition, state agencies are protected by Eleventh Amendment immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Thus, the Department of Correction is not susceptible to liability under section 1983. *See McGinty v. New York*, 251 F.3d 84, 91 (2d Cir. 2001) (Eleventh Amendment bars suits for money damages or injunctive relief against state agencies). All section 1983 claims against the Department of Correction are dismissed pursuant to 28 U.S.C. § 1915A(b)(1). For reasons already stated, Al-Bukhari's breach of contract claim against the Department of Correction remains.

C. Declaratory Relief and Official Capacity Damages Claims

Al-Bukhari seeks declaratory relief in the form of a declaration that the defendants have violated the ADA, RLUIPA, the settlement agreement, and his constitutional rights. He also seeks damages from the defendants in their official capacities.

The Eleventh Amendment divests the district court of subject matter jurisdiction over any claims for monetary damages against a state official acting in his official capacity unless the state has waived this immunity or Congress has abrogated it. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Section 1983 does not abrogate state sovereign immunity. *See Quern v. Jordan*, 440 U.S. 332, 341–45 (1979). Nor has Al-Bukhari alleged any facts suggesting that Connecticut has waived this immunity.

Al-Bukhari seeks declaratory relief in the form of a statement that the defendants violated his various rights. That is not a proper request for declaratory relief. Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of that right or a disturbance of the relationship." *Colabella v. American Institute of Certified Public Accountants*, No. 10-cv-2291(KAM/ALC), 2011 WL 4532132, at *22 (E.D.N.Y. Sept. 28, 2011) (citations omitted). Declaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages. *See In re Combustible Equip. Assoc.*, 838 F.2d 3, 37 (2d Cir. 1988). Al-Bukhari is asking the Court to state that the actions described in the complaint—past actions—violated his rights. He has not identified any legal relationships or issues that require resolution via declaratory relief. The request for declaratory relief is dismissed. *See Camofi Master LDC v. College P'ship, Inc.*, 452 F. Supp. 2d 462, 480 (S.D.N.Y. 2006) (concluding that claim for declaratory relief that is duplicative of adjudicative claim underlying action serves no purpose).

The request for declaratory relief and all claims for damages against the defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(1). The case will proceed on the damages claims against the remaining defendants in their individual capacities.

III. Conclusion

All claims under the Americans with Disabilities Act and all claims against the Department of Correction, with the exception of the breach of contract claim, are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The complaint will proceed on the claims against the remaining defendants for denial of First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights, assault and battery, and violation of the settlement agreements.

The Court enters the following orders:

(1) **The Clerk shall** verify the current work address of defendants Erfe, Johnson, Phillips, St. Pierre, Baron, and Vassar with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet to each defendant at the confirmed address within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth (35) day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the Complaint on the Department of Correction at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return

of service within thirty (30) days from the date of this order.

(3)     **The Clerk shall** send written notice to the plaintiff of the status of this action, along with a copy of this Order.

(4)     **The Clerk shall** send a courtesy copy of the Complaint and this Ruling and Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)     The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include any and all additional defenses permitted by the Federal Rules.

(6)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order.  Discovery requests need not be filed with the court.

(7)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that the plaintiff MUST notify the court.  Failure to do so can result in the dismissal of the case.  The plaintiff must give notice of a new address even if he is incarcerated.  The plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the

notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  The plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(10) The Court cannot effect service on defendant John Doe without his full name and current work address.  Al-Bukhari is directed to file an amended complaint containing this information within **thirty (30) days** from the date of this order.  Failure to timely file the amended complaint may result in the dismissal of all claims against defendant Doe without further notice from the Court.

(11) Al-Bukhari's motion for reconsideration [**Doc. #7**], relating to the first notice of insufficiency issued in this case, is **DENIED as moot**.

**SO ORDERED** this 9th day of May 2016 at Bridgeport, Connecticut.

/s/STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge